IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, ) ) ) Plaintiff, ) ) vs. ) ) KATHLEEN SEBELIUS, in her official ) capacity as Secretary of Health ) and Human Services, and UNITED ) STATES DEPARTMENT OF HEALTH AND ) HUMAN SERVICES, ) ) Defendants. ) | Civil Action No. 09-808 |

**MEMORANDUM OPINION**

**I**

Before the Court is a motion by Plaintiff, the Commonwealth of Pennsylvania's Department of Public Welfare ("DPW"), to stay consideration of the motion for summary judgment filed by Defendants, Kathleen Sebelius, in her official capacity as Secretary of Health and Human Services (individually "Secretary") and the United States Department of Health and Human Services (individually "HHS"), to permit DPW to engage in limited discovery pursuant to Fed.R.Civ.P. 56(f). For the reasons set forth below, DPW's motion to stay will be denied.

**II**

The background and procedural history of this case may be summarized as follows:

On August 7, 2007, HHS's Inspector General submitted a

1

report to the Administration for Children and Families ("ACF") concerning his audit of States' reimbursement of the Federal share of overpayments recovered in connection with the Aid to Families with Dependent Children ("AFDC") program which ended in 1996. The report noted that of the 43 States reviewed, 24 States had complied with Federal requirements and reimbursed ACF for the Federal share of overpayments recovered after the AFDC program ended, while the remaining 19 States, including the Commonwealth of Pennsylvania, and the District of Columbia continued to recover overpayments from former AFDC recipients and had not reimbursed ACF for the Federal share of the overpayments. The Inspector General recommended that ACF collect the Federal share of AFDC overpayment recoveries from the 19 States and the District of Columbia which had not complied with the Federal reimbursement requirement and that monitoring procedures be established to ensure that the Federal government receives its share of future State-recovered AFDC overpayments in a timely manner. (Docket No. 7-5, pp. 4-21).

Based on the Inspector General's audit report, HHS sent a letter to DPW on June 26, 2008, requesting reimbursement of the Federal share of AFDC overpayments recovered by DPW between October 1, 1996 and June 30, 2006, which totaled $5,609,572. (Docket No. 7-5, pp. 1-3). On July 28, 2008, DPW appealed the reimbursement request or "disallowance" to HHS's Departmental

Appeals Board ("DAB"). (Docket No. 7-1, p. 23).

On April 16, 2009, the DAB issued a decision sustaining disallowance of the Federal share of AFDC overpayments recovered by DPW after the AFDC program ended. Succinctly stated, the DAB decision required the monies to be returned to HHS, contrary to DPW's position that it was legally authorized to use those funds to increase assistance to needy families under the Temporary Assistance for Needy Families program which replaced the AFDC program in 1996. (Docket No. 7-1, pp. 1-22).

DPW filed this civil action on June 23, 2009. In Count One, DPW seeks judicial review of the DAB's decision under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, and declaratory relief. In Count Two, DPW asserts a claim against HHS for violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 522(a)(2), seeking declaratory and injunctive relief. (Docket No. 1).

On September 10, 2009, an Order was entered referring the case to non-binding arbitration to be completed by November 6, 2009. (Docket No. 6). Five days later, Defendants filed the administrative record in this case. (Docket No. 7). On October 6, 2009, the parties moved jointly to extend the time to complete arbitration. (Docket No. 8). The motion was granted and the deadline for completion of arbitration was extended to March 26, 2010. (Docket No. 9).

On March 10, 2010, the arbitration award was filed under seal, and, a week later, DPW requested a trial de novo. (Docket Nos. 13 and 14). Pursuant to an Order of Court dated April 6, 2010, which was entered following a case management conference, Defendants filed a motion for summary judgment under Fed.R.Civ.P. 56 on April 30, 2010, together with a concise statement of material facts and supporting brief. (Docket Nos. 15, 18-20). With respect to Count One of the complaint, Defendants assert DPW cannot establish that the DAB's decision was arbitrary, capricious or unlawful under the APA. As to Count Two, Defendants assert, among other things, that DPW lacks standing to pursue its FOIA claim. (Docket No. 19, pp. 1-2).

On May 21, 2010, DPW filed its brief in opposition to Defendants' summary judgment motion, a concise statement of material facts and a response to Defendants' concise statement of material facts. (Docket Nos. 21-23). A reply to DPW's brief in opposition was filed by Defendants on June 2, 2010, and DPW filed a sur-reply on June 15, 2010. (Docket Nos. 24 and 26). The next day, June 16, 2010, DPW filed the present motion to stay pending limited discovery under Fed.R.Civ.P. 56(f). (Docket No. 27).

### III

A party requiring further discovery to oppose a motion for summary judgment must comply with Rule 56(f) of the Federal Rules of Civil Procedure, which provides in relevant part:

4

**Rule 56. Summary Judgment**

* * *

**(f) When Affidavits Are Unavailable.** If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

* * *

**(2)** order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken;...

* * *

Beyond the procedural requirement of filing an affidavit, Rule 56(f) requires that a party indicate to the district court its need for discovery, what material facts it hopes to uncover and why it has not previously discovered the information. Radich v. Goode, 886 F.2d 1391, 1393-94 (3d Cir.1989), citing, Hancock Industries v. Schaeffer, 811 F.2d 225, 229-30 (3d Cir.1987). See also Dowling v. City of Philadelphia, 855 F.2d 136, 139-40 (3d Cir.1988)("This court has interpreted Rule 56(f) as imposing a requirement that a party seeking further discovery in response to a motion for summary judgment submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.").

The purpose of Rule 56(f) is to prevent premature motions for summary judgment by allowing "a summary judgment motion to be denied ... if the nonmoving party has not had an opportunity to

5

make full discovery." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). See also Doe v. Abington Friends School, 480 F.3d 252, 257 (3d Cir.2007)("If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion.").

## IV

DPW has complied with the procedural requirement of Rule 56(f) by submitting the declaration of Jason W. Manne, its Deputy Chief Counsel, in support of the present motion. (Docket No. 27-1). DPW seeks limited discovery on two issues. One issue pertains to Count One of DPW's complaint; the other issue to Count Two.

**Count One**

In the memorandum filed in support of their motion for summary judgment on Count One of DPW's complaint, Defendants assert that the DAB's decision affirming disallowance of the Federal share of AFDC overpayments recovered by DPW after the AFDC program ended in 1996 is entitled to deference pursuant to the Supreme Court's decision in Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). (Docket No. 19, p. 11). In response to the assertion that the DAB's decision is entitled to Chevron deference, DPW has raised a constitutional challenge to the DAB under the Appointments Clause

(Docket No. 21, pp. 12-14),[1] an argument previously raised by DPW and rejected by the Court of Appeals for the Third Circuit in Comm. of Pennsylvania v. United States Dept. of Health and Human Services, 80 F.3d 796 (3d Cir. 1996)(noting that in recognition of the enormous scope of the Secretary's responsibilities, Congress gave the Secretary carte blanche in 42 U.S.C. § 913 to appoint individuals to assist her in carrying out these duties,[2] and holding that the Secretary's general appointment power under 42 U.S.C. § 913 authorized the Secretary to appoint DAB members because they are inferior officers for purposes of the Appointments Clause, rather than principal officers who must be

---

[1]The Appointments Clause provides in relevant part:

... [the President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. Art. II, § 2, cl. 2.

[2]42 U.S.C. § 913 provides in pertinent part:

"... The Secretary is authorized to appoint and fix the compensation of such officers and employees, and to make such expenditures as may be necessary for carrying out the functions of the Secretary under this chapter...."

7

appointed with the advice and consent of the Senate).³

In summary, DPW asserts that the DAB's power is substantially broader today than it was in 1996 when the Court of Appeals for the Third Circuit held that DAB members were properly appointed by the Secretary because they were inferior officers under the Appointments Clause, and that if the DAB's broader power includes "statutory 'gap-filling' authority - essentially stand-alone adjudicative rule making power," DAB members are principal officers for purposes of the Appointments Clause who must be appointed with the advice and consent of the Senate. (Docket No. 21, pp. 13-14). According to the declaration of Mr. Manne, DPW's Deputy Chief Counsel, DPW needs limited discovery to update the facts regarding the nature of the DAB today in order to have a complete record relating to DPW's Appointments Clause argument since it has been 14 years since the Court of Appeals for the Third Circuit rendered its decision on the status of DAB members under the Appointments Clause. (Docket No. 27, ¶¶ 10-11).

After consideration, the Court agrees with Defendants that a number of problems are presented by the Appointments Clause argument raised by DPW in response to their motion for summary

---

³The Appointments Clause divides all officers of the United States into two classes: principal officers and inferior officers. Only the former are appointed subject to the advice and consent of the Senate. See Morrison v. Olson, 487 U.S. 654, 670 (1988).

judgment. (Docket No. 30, pp. 5-7). However, disposition of DPW's Rule 56(f) motion as to Count One of the complaint does not require resolution of those problems because the Court concludes that the DAB's decision in this case is not entitled to Chevron deference.

In Chevron, the Environmental Protection Agency ("EPA") promulgated regulations to implement requirements enacted by Congress in the Clean Air Act Amendments of 1977 ("CAA Amendments"). The requirement at issue related to States that had not attained the national air quality standards established by the EPA pursuant to earlier legislation. Under the CAA Amendments, the "non-attainment" States were required by Congress to establish a permit program regulating "new or modified major stationary sources" of air pollution. The EPA regulations promulgated to implement this permit requirement allowed States to adopt a plantwide definition of the term "stationary source." Under this definition, an existing plant that contained several pollution-emitting devices could install or modify one piece of equipment without subjecting the plant to the permit requirement if the installation or modification would not increase the total emissions from the plant. A timely petition for review was filed, and the Court of Appeals for the District of Columbia Circuit set aside the EPA regulations defining the term "stationary source." Subsequently, certiorari was granted by the

Supreme Court, and the decision of the Court of Appeals was reversed.

The precise question presented in <u>Chevron</u> was whether the EPA regulations allowing States to treat all pollution-emitting devices within a plant as if they were encased within a single "bubble" was based on a reasonable construction of the term "stationary source" in the CAA Amendments. In holding that the EPA's construction was permissible, the Supreme Court stated:

* * *

> "The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." <u>Morton v. Ruiz</u>, 415 U.S. 199, 231 (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. (footnote omitted). Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency. (footnote omitted).
>
> We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, (footnote omitted) and the principle of deference to administrative interpretations
>
>> "has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations. (citations omitted).

10

> "... If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." United States v. Shimer, 367 U.S. 374, 382, 383 (1961).
>
> Accord, Capital Cities Cable, Inc. v. Crisp, ante, at 699-700.
>
> In light of these well-settled principles it is clear that the Court of Appeals misconceived the nature of its role in reviewing the regulations at issue. Once it determined, after its own examination of the legislation, that Congress did not actually have an intent regarding the applicability of the bubble concept to the permit program, the question before it was not whether in its view the concept is "inappropriate" in the general context of a program designed to improve air quality, but whether the Administrator's view that it is appropriate in the context of this particular program is a reasonable one. Based on the examination of the legislation and its history which follows, we agree with the Court of Appeals that Congress did not have a specific intention on the applicability of the bubble concept in these cases, and conclude that the EPA's use of that concept here is a reasonable policy choice for the agency to make.
>
> * * *

467 U.S. at 843-45.

Unlike Chevron, this case does not present a challenge to regulations promulgated by an agency to fill a gap left by Congress in a statutory scheme. Rather, it is a challenge to a DAB decision rendered in connection with a specific dispute between DPW and HHS regarding AFDC overpayment recoveries and is analogous to the facts presented in United States v. Mead Corp., 533 U.S. 218 (2001).

In Mead, after classifying an importer's day planners as

11

duty free for several years, the Customs Headquarters Office issued a ruling letter classifying the day planners as bound diaries subject to tariff.  The importer filed suit in the Court of International Trade to challenge the ruling and summary judgment was granted to the government.  On appeal, the Court of Appeals for the Federal Circuit reversed, rejecting the argument of the United States Customs Service that the ruling was entitled to Chevron deference and holding that the ruling was entitled to no deference.  The importer's petition for writ of certiorari was granted.  The Supreme Court vacated the judgment of the Court of Appeals and remanded the case for further proceedings.

The Supreme Court in Mead agreed with the Court of Appeals that the tariff classification ruling was not entitled to deference under Chevron because there was no indication that Congress intended such a ruling to carry the force of law, stating:

\* \* \*

> We have recognized a very good indicator of delegation meriting Chevron treatment in express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed.  See, e.g., EEOC v. Arabian American Oil Co., 499 U.S. 244, 257, 111 S.Ct. 1277, 113 L.Ed.2d 247 (1991)(no Chevron deference to agency guideline where congressional delegation did not include the power to "'promulgate rules or regulations'" (quoting General Elec. Co. v. Gilbert, 429 U.S. 125, 141, 97 S.Ct. 401, 50 L.Ed.2d 621 (2000)(BREYER, J., dissenting)(where it is in doubt that Congress actually intended to delegate particular interpretive authority to an agency, Chevron is "inapplicable").  It is fair to assume generally that

12

Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force. (footnote omitted). Cf. Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 741, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996)(APA notice and comment "designed to assure due deliberation"). Thus, the overwhelming number of our cases applying Chevron deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication. (footnote omitted). That said, and as significant as notice-and-comment is in pointing to Chevron authority, the want of that procedure here does not decide the case, for we have sometimes found reasons for Chevron deference even when no such administrative formality was required and none was afforded, see, e.g., NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 256-257, 263, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995). (footnote omitted). The fact that the tariff classification here was not a product of such formal process does not alone, therefore, bar the application of Chevron. There are, nonetheless, ample reasons to deny Chevron deference here. The authorization for classification rulings, and Customs's practice in making them, present a case far removed not only from notice-and-comment process, but from any other circumstances reasonably suggesting that Congress ever thought of classification rulings as deserving the deference claimed for them here.

B

No matter which angle we choose for viewing the Customs ruling letter in this case, it fails to qualify under Chevron. On the face of the statute, to begin with, the terms of the congressional delegation give no indication that Congress meant to delegate authority to Customs to issue classification rulings with the force of law.... It is true as well that Congress had classification rulings in mind when it explicitly authorized, in a parenthetical, the issuance of "regulations establishing procedures for the issuance of binding rulings prior to the entry of the merchandise concerned," 19 U.S.C. § 1502(a). (footnote omitted). The reference to binding classifications does not, however, bespeak the legislative type of activity that would naturally bind more than the parties to the ruling, once the goods classified are admitted into this country. And though the statute's direction to disseminate "information" necessary to "secure" uniformity, ibid., seems to assume that a ruling may be precedent in later

>    transactions, precedential value alone does not add up to
>    Chevron entitlement; interpretive rules may sometimes
>    function as precedents, see Strauss, The Rulemaking
>    Continuum, 41 Duke L.J. 1463, 1472-1473 (1992), and they
>    enjoy no Chevron status as a class....

522 U.S. at 229-32.[4]

Like the tariff classification ruling in Mead, the Court concludes that the DAB's decision in this case is not entitled to Chevron deference. The decision is limited to the rights of the parties in this case with respect to the AFDC overpayments recovered by DPW since the AFDC program ended in 1996. It is not an exercise of gap-filling authority that carries the force of law which would exceed the authority of inferior officers under the Appointments Clause.

In sum, the conclusion that the DAB's decision in this case is not entitled to Chevron deference eliminates the basis for DPW's renewal of its Appointments Clause argument regarding the

---

[4] Although the Supreme Court agreed with the Court of appeals in Mead that the tariff classification ruling was not entitled to Chevron deference, it did not agree with the Court of Appeals' further conclusion that the ruling was not entitled to any deference. As a result, the case was remanded to the Court of Appeals for further proceedings to determine what deference was due to the ruling consistent with Skidmore v. Swift & Co., 323 U.S. 134 (1944)(in applying Fair Labor Standards Act, rulings of administrator thereof are not controlling upon courts, but may be resorted to for guidance; weight to be given by court to administrator's ruling is dependent upon thoroughness evident in its consideration, validity of its reasoning, and consistency with earlier and later pronouncements). Similarly, the Court concludes that the DAB's decision in this case is entitled to some deference under Skidmore due to the complexity of the regulatory scheme at issue and the DAB's experience in resolving disputes arising out of that regulatory scheme.

Secretary's appointment of the DAB. As a consequence, limited discovery to update the facts regarding any increase in the DAB's power since the Court of Appeals for the Third Circuit's decision in 1996 is unnecessary and will be denied.

**Count Two**

In Count Two of the complaint, DPW asserts that an index of the DAB's final decisions and orders issued in the adjudication of cases is not maintained by Defendants in violation of FOIA.[5] (Docket No. 1, ¶ 19). In support of DPW's Rule 56(f) motion with respect to Count Two, Mr. Manne, DPW's Deputy Chief Counsel, avers that during the 1980s, the DAB maintained a paper index of its decisions which has since been discontinued; although DAB opinions are available on HHS's website, the opinions can only be found by a keyword search; Defendants' assertion that DAB

---

[5]The relevant provision of FOIA states:

> ... Each agency shall also maintain and make available for public inspection and copying current indexes providing identifying information for the public as to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published. Each agency shall promptly publish, quarterly or more frequently, and distribute (by sale or otherwise) copies of each index or supplements thereto unless it determines by order published in the Federal Register that the publication would be unnecessary or impracticable, in which case the agency shall nonetheless provide copies of such index on request at a cost not to exceed the direct cost of duplication. Each agency shall make the index referred to in subparagraph (E) available by computer telecommunications by December 31, 1999....

5 U.S.C. § 552(a)(2)(E).

decisions can be searched by topic on HHS's website - to the extent it implies something other than a keyword search - is false; the lack of an index of DAB decisions has hampered his effective representation of DPW before the DAB because he can never be certain that he has located all important DAB decisions on a topic;[6] he solicited opposing counsel to enter into a stipulation of fact on this issue but counsel did not respond; and, based on the foregoing, limited discovery regarding the search capabilities of HHS's website for DAB decisions is required. (Docket No. 27-1, ¶¶ 5-9).

In their motion for summary judgment, Defendants assert that they are entitled to judgment as a matter of law on DPW's FOIA claim because, among other things, DPW lacks standing to bring this claim (Docket No. 19, pp. 21-23), and the Court agrees with Defendants that DPW is not entitled to discovery concerning the search capabilities of HHS's website for DAB decisions pending a

---

[6]Mr. Manne gives the following example to support this averment:

> ... For example, I often want to find DAB cases setting forth the principle that a State's interpretation of an ambiguous statute, regulation, or state plan is entitled to prevail over a Federal interpretation if the State has not been given notice of the Federal interpretation. Those cases are difficult to locate by key word because the DAB does not use uniform wording in discussing the issue. However, the underlying concept is "deference," and I would expect that topic to be included in an adequate index.

(Docket No. 27-1, ¶ 8).

ruling on the standing issue. (Docket No. 30, pp. 3-4). Under the circumstances, DPW's Rule 56(f) motion as to Count Two will be denied without prejudice.

*William L. Standish*
William L. Standish
United States District Judge

Date: *28 July 2010*